**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MARY K. SHEPHERD,**

  **Plaintiff,**

            **Civil Action 2:20-cv-6576**
            **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

  **Defendant.**

## OPINION AND ORDER

Plaintiff, Mary K. Shepherd ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties have consented to the undersigned's jurisdiction pursuant to 28 U.S.C § 636(c). (ECF Nos. 6, 7.) Pending before the Court is Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 14). For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's non-disability determination.

## I.  BACKGROUND

This is not Plaintiff's first request for social security benefits. Plaintiff previously filed SSI and DIB applications in March 2016 alleging that she became disabled in March 2015. (R. at 65.) Those applications were denied initially and on reconsideration in 2016. (*Id.*) Plaintiff

requested a hearing on her 2016 applications and a hearing was held on February 27, 2018, by Administrative Law Judge William Stanley ("ALJ Stanley"). (*Id*.)

After the February 27, 2018 hearing, but before ALJ Stanley issued a determination on Plaintiff's 2016 applications, Plaintiff filed a second set of SSI and DIB applications on May 3, 2018, alleging that she had been disabled since April 26, 2018. (R. at 240–50.) Plaintiff's 2018 applications were denied initially in July 2018 (R. at 86–99, 101–14), and upon reconsideration in September 2018 (R. at 116–30, 132–46). Plaintiff requested a hearing on her 2018 applications, and one was held via videoconference on February 24, 2020, by Administrative Law Judge Brian Crockett ("ALJ Crockett"). (R. at 29–56.) A vocational expert ("VE") appeared and testified at that videoconference. (*Id*.)

On March 5, 2020, ALJ Stanley issued a written determination denying Plaintiff's 2016 applications. (R. at 62–85.) On March 10, 2020, ALJ Crockett issued a determination denying Plaintiff's 2018 applications. (R. at 8–28.) The Appeals Council denied Plaintiff's request for review of ALJ Crockett's March 10, 2020 determination, thus making it final for purposes of judicial review. (R. at 2–7.)

In this federal action, Plaintiff challenges the disposition of her 2018 applications. Plaintiff raises several contentions of error. First, Plaintiff alleges that ALJ Crockett's residual functional capacity ("RFC")[1] determination is not supported by substantial evidence because the ALJ failed to incorporate an off-task restriction in her RFC and failed to make findings about her pain. (ECF No. 15, at PageID # 861–62.) Plaintiff also alleges that ALJ Crockett erred by relying on testimony from the VE to determine that there were a significant number of jobs in the

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

national economy that Plaintiff could perform without analyzing if the number of jobs identified

by the VE was significant. (*Id.*, at PageID # 857–59.) Plaintiff relatedly contends that the term

"significant" is ambiguous and thus unconstitutionally void for vagueness. (*Id.*, at PageID #

859–61.) The Court finds that all of Plaintiff's contentions of error lack merit.

## II.     THE ALJ's DECISION

ALJ Crockett issued his decision on March 10, 2020, finding that Plaintiff was not

disabled within the meaning of the Social Security Act. (R. at 8–28.) In that decision, ALJ

Crockett noted that ALJ Stanley had issued a final determination on Plaintiff's 2016 applications.

(R. at 11.) ALJ Crocket also noted that pursuant to case law and agency policy, he was required

to adopt ALJ Stanley's findings in the absence of new and material evidence.[2] (R. at 11–12.)

But ALJ Crockett found that there was new and material evidence, and therefore indicated that

he would not "blindly" adopt ALJ Stanley's prior findings and would instead expressly

incorporate them by reference where they provided support for the current findings. (R. at 12.)

ALJ Crockett then found that Plaintiff met the insured status requirements of the Social

Security Act through December 31, 2019. (R. at 14.) At step one of the sequential evaluation

---

[2] The principles of *res judicata* provide that, in the absence of new and material evidence or changed circumstances, a subsequent ALJ is bound by the findings of a previous ALJ or Appeals Council decision. *See* Social Security Acquiescence Rulings 98-3(6), 98-4(6); *Dennard v. Sec'y of Health and Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) as modified by *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). The parties do not challenge the ALJ's application of *res judicata*.

process,[3] ALJ Crockett found that Plaintiff had not engaged in substantial gainful activity since April 26, 2018. (*Id.*) At step two, ALJ Crockett found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, degenerative joint disease of the hips and knees, asthmatic bronchitis, obesity, depressive disorder, and bipolar disorder. (*Id.*) At step three, ALJ Crockett found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-15.)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she requires a sit/stand option, which would allow her to briefly, for up to 2 minutes, alternate between the sitting or standing position at 30[-] minute intervals throughout the workday without breaking the task at hand. She must avoid concentrated exposure to extreme cold,

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

4

> vibrations, pulmonary irritants, and hazards. She can no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. The work should be limited to simple, routine work in occupations with an SVP of 2 or lower, performed in a low stress setting. A low stress setting is defined as requiring no fast paced production, no more than occasional changes in work routine or work setting, and no greater than occasional simple decision making.

(R. at 17.) When assessing Plaintiff's RFC, the ALJ found that although her medically determinable impairments could be expected to cause at least some of her alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record evidence. (R. at 18.)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a nurse assistant or hospital cleaner. (R. at 22.) At step five, the ALJ relied on testimony from the VE to determine that in light of Plaintiff's age, education, work experience, and RFC, there are jobs that existed in significant numbers in the national economy that she could perform such as an order clerk, document preparer, and touch up screener. (R. at 23.) The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, since her alleged date of onset, April 26, 2018, through the date of the determination. (*Id.*)

## III.    RELEVANT RECORD EVIDENCE[4]

### A.    Plaintiff's Testimony

At the February 24, 2020 hearing, Plaintiff testified to the following about her physical impairments. Plaintiff had a driver's license and would drive a couple times a week to take her neighbor places she needed to go such as grocery stores or to the doctor. (R. at 36.) On a typical day, Plaintiff would get up between eight and nine, take pills, have breakfast, and would then

---

[4] Because Plaintiff's contentions of error primarily pertain to her physical impairments, the Court focuses its discussion on the same.

usually need to lie down for an hour and a half with a heating pad and a TENS unit on her back due to back pain.  (R. at 41.)   She would sweep her apartment once every two weeks, and although her apartment was small, it would take her all day to sweep it.  (R. at 42–43.)  She could only sweep for ten minutes at a time because sweeping pulled on her lower back.  (R. at 43.)  On other days, she would watch television, get up and take her medicine, and do dishes if she had any.  (*Id.*)   Then she would usually lay down with a TENS unit and a heating pad on her back and watch television for an hour and a half before going to check her mail around noon. (R. at 43–44.)  She would have lunch around 1:00 p.m., after which she would need to lay back down again with a heating pad and TENS unit for an hour because her back would be hurting. (R. at 44.)  She could sleep for about an hour or two before pain woke her up and she had to get up, walk around, and stretch her back so that she could lay back own.  (*Id.*)  When she awoke like this, she would spend a half hour to forty-five minutes walking, sitting, and trying to relieve some of the pain and pressure.  (*Id.*)  She could only sit in an office chair for a half hour to forty-five minutes before she would need to get up because her legs would go numb.  (R. at 45.)  She would need to put her hands on a table to help push herself up from sitting to standing.  (*Id.*)  She also needed to put her hands something to balance when standing after sitting because she was unsteady due to her left leg being one inch shorter than her right leg.  (*Id.*)  Her balance was not as bad, however, when she was wearing shoes, but she would still stumble sometimes.  (*Id.*) Numbness in her legs impacted her ability to stand.  (R. at 46.)

## B.    Treatment Records

The record reflects that Plaintiff sought treatment for her hip and back pain in 2018 and 2019.  Records from April 2018 noted that Plaintiff had generalized osteoarthritis, lumbar radiculopathy, and chronic pain syndrome.  (R. at 788–89.)  Physical examinations in 2018 and

2019 regularly found all of the following. Plaintiff had difficulty going from seated to standing position. (R. at 783, 777, 771, 765, 760, 755, 750, 744, 738, 732.) Plaintiff had antalgic gait but was in no acute distress. (*Id*.) Plaintiff also had mild signs of bilateral foot drop, a straight-leg raise of about 30 degrees bilaterally, and positive Faber's test bilaterally. (*Id*.) In addition, Plaintiff had joint stiffness with bilateral hip rotation. (*Id*.) Her lumbar flexion was less than 90 degrees and her lumbar extension was less than 10 degrees. (*Id*.) Plaintiff also had 4/5 motor strength in both legs, 2/4 reflexes at L4, and diminished sensation on the right leg at the L4 and L5 dermatomes. (*Id*.)

During visits in 2018 and 2019, Plaintiff was prescribed Percocet and diclofenac, and she regularly reported that her pain medications were partly effective as only sometimes they did not help. (R. at 780, 774, 768, 762, 757, 752, 747, 741, 735, 729.) Plaintiff also regularly reported that she frequently used a TENS unit with good relief. (*Id*.) In addition, Plaintiff routinely reported that heat and ice were relieving factors. (*Id*.) On August 21, 2018, Plaintiff reported that she had received a heel lift and was walking much better. (R. at 774.) On October 10, 2019, Plaintiff indicated that her pain had improved since her last office visit on August 14, 2019. (R. at 735.) She also reported that she was walking more for pain relief and had been doing stretches that were discussed during a prior appointment and was deriving benefits from them. (*Id*.)

An August 14, 2019, x-ray of Plaintiff's left hip showed no acute fracture or dislocation. R. at 796.) There was mild glenohumeral joint pace narrowing ad marginal spurring of the acetabular rim, but no suspicious osseous lesion was shown. (*Id*.)

C.     **State Agency Reviewers**

On July 11, 2018, non-examining physician, Mehr Siddiqui, M.D., reviewed Plaintiff's file at the initial level.  (R. at 93–95, 109–110.)  Dr. Siddiqui opined that Plaintiff could perform a range of light exertional work, including occasionally lifting 20 pounds and frequently lifting 10 pounds; standing and/or walking about 6 hours in an 8-hour workday; and sitting for about 6 hours in an 8-hour workday.  (R. at 94, 109.)  In addition, Dr. Siddiqui opined that Plaintiff was also limited to occasionally climbing ramps/stairs, stooping, kneeling, crouching or crawling; but could never climb ladders/ropes/scaffold.  (*Id.*)  He further opined that Plaintiff should avoid concentrated exposure to extreme cold; respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation; and hazards such as machinery and heights.  (R. at 95, 110.)  Steve McKee, M.D., reviewed Plaintiff's file upon reconsideration and affirmed Dr. Siddiqui's assessment in September 2018.  (R. at 124–26, 140–42.)

## IV.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.    ANALYSIS

As previously noted, Plaintiff advances three contentions or error.  The Court addresses each in turn.

### A.    ALJ Crockett's RFC determination is supported by substantial evidence.

Plaintiff alleges that ALJ Crockett's RFC determination was not supported by substantial evidence.  (ECF No. 15, at PageID # 861–62.)  This contention of error lack merit.

The determination of a claimant's RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole.  42 U.S.C. §§ 423(d)(5)(B),

1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996). An ALJ must also explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

Plaintiff alleges that ALJ Crockett's RFC determination was not supported by substantial evidence for two reasons, neither of which is persuasive.

### 1. Being Off-Task While Shifting Positions

First, Plaintiff notes that ALJ Crocket incorporated into her RFC "a sit/stand option, which would allow her to briefly, for up to two minutes, alternate between the sitting or standing position at 30-minute intervals throughout the workday without breaking the task at hand." (ECF No. 15, at PageID # 861, quoting R. at 17.) Plaintiff asserts that ALJ Crockett erred by finding that she was able to remain on-task while moving between sitting and standing. (*Id*.) Stated differently, Plaintiff contends that ALJ Crockett should have determined that she would need to be off task when shifting positions. In support, Plaintiff cites treatment records

10

indicating that Plaintiff had a difficult time going from seated to standing position. (ECF No. 15, at PageID # 861.)

This contention of error lacks merit. Plaintiff is correct that examinations routinely found that she had a difficult time going from sitting to standing. (R. at 783, 777, 771, 765, 760, 755, 750, 744, 738, 732.) But the medical records do not explain what it meant for Plaintiff to have a "difficult time." At the February 24, 2020 hearing, Plaintiff testified that she needed to put her hands on a table to help push herself up from sitting to standing. (R. at 45.) Plaintiff did not indicate, however, that she could not focus on other tasks while assisting herself standing. ALJ Crockett did not err by failing to extrapolate an off-task restriction from this evidence. Moreover, the Commissioner correctly asserts that no physician ever opined or found that Plaintiff would be off task while she shifted positions. Accordingly, the Court declines to find that ALJ Crockett was required to incorporate such a restriction into Plaintiff's RFC.

### 2. Plaintiff's Constant Pain

Plaintiff also alleges that the ALJ Crockett's RFC determination was not supported by substantial evidence because he failed to make any specific findings about whether Plaintiff's constant pain would impact her RFC. (ECF No. 15, at PageID # 862.) This allegation of error also lacks merit.

For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires the ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or

character for truthfulness. *See id.* at \*11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them." *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at \*10 (N.D. Ohio June 22, 2017). The rules were clarified primarily to account for the difference between a credibility determination, which necessarily impacts the entirety of a claimant's subjective testimony, and a consistency determination, which applies only to specific statements regarding symptoms. *See* SSR 16-3p at \*2. It follows, therefore, that the procedures for reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the procedures under SSR 96-7p. Accordingly, the undersigned concludes that existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review."). In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011), *adopted*, 2011 WL 3843703 (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

Here, ALJ Crockett determined that Plaintiff's "medically determinable impairments could be reasonably expected to cause [her] alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence." (R. at 16.) ALJ Crockett then discussed the medical records at length before concluding as follows:

13

> In sum, the undersigned finds that the symptoms and limitations alleged by the claimant are not fully supported by the objective evidence. To begin, the undersigned notes that that while the claimant alleged she is unable to work due to pain in the back and osteoarthritis, her treatment has been conservative overall. In fact, the claimant consistently reported that her TENS unit provided her with good relief (Exhibit B7F, pp. 19, 24, 29, 34, and 46). In addition, during more recent medical visits in October 2019 and December 2019, the claimant reported that while she still experienced pain and an antalgic gait, she was doing stretches and walking more often for hip pain relief (Exhibit B7F, p. 7). She also denied any new hospital visits or ER visits for her complaints (Exhibit B7F, p. 1).

(R. at 20.)  This discussion demonstrates that contrary to Plaintiff's assertions, ALJ Crockett explicitly considered Plaintiff's allegations relating to pain and found that they were not consistent with the objective evidence.

Substantial evidence supports that determination.  ALJ Crockett noted that Plaintiff's treatment was generally conservative.  (R. at 20.)  That is a fair characterization of Plaintiff's treatment plan, which included prescriptions for pain medications and a TENS unit but did not involve surgeries.  ALJ Crockett also noted that Plaintiff consistently reported that her TENS unit provided her with good relief.  (R. at 20.)  And the record indeed reflects that Plaintiff regularly made such reports.  (R. at 780, 774, 768, 762, 757, 752, 747, 741, 735, 729.)  ALJ Crockett also considered that Plaintiff reported that she was doing walking and stretching exercises to relieve her hip pain.  (R. at 20.)  That too accurately reflects the record evidence.  (R. at 735.)

In short, the ALJ Crockett considered Plaintiff's allegations of pain and found that they were not fully consistent with other record evidence.  That determination is supported by substantial evidence contained in the record.  Plaintiff's allegation of error lacks merit.

**B.      ALJ's Crockett's determination that there were a significant number of jobs that Plaintiff could perform is supported by substantial evidence.**

Plaintiff also alleges that ALJ Crockett erred at step five when he determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. This contention of error likewise lacks merit.

At step five, an ALJ must consider a claimant's RFC, age, education, and work experience to see if the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v). If a claimant can make an adjustment to other work, then the Commissioner "will find that [the claimant] is not disabled." *Id.* If, however, the claimant "cannot make an adjustment to other work," the Commissioner will find that the claimant *is* disabled. *Id.* The "other work" to which a claimant must be able to adjust "must exist in significant numbers in the national economy"—*i.e.*, "in the region where [the claimant] lives or in several regions in the country." *Id.* § 416.960(c)(1). The burden for establishing that "other work" exists in significant numbers in the national economy rests with the Commissioner, not the claimant. *Id.* § 416.960(c)(2).

ALJs are permitted to consider "'reliable job information' available from various publications" as evidence of a claimant's ability to do other work that exists in the national economy. S.S.R. 00–4p, 2000 WL 1898704, at * 2, (S.S.A. Dec. 4, 2000) (citing 20 C.F.R. §§ 404.1566(d) and 416.966(d)). Such publications include the Dictionary of Occupational Titles ("DOT") which provides "information about jobs (classified by their exertional and skill requirements) that exist in the national economy." 20 C.F.R. §§ 416.969, 404.1569. ALJs are also authorized to consider testimony from VEs as a source of "occupational evidence." S.S.R.

00–4p, 2000 WL 1898704, at *2. *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 603 (6th Cir. 2009).

The Court finds that ALJ Crockett did not err. At the February 24, 2020 hearing, the VE testified that a person with Plaintiff's RFC, as assessed by ALJ Crockett, would be capable of performing sedentary work such as order clerk,[5] document preparer,[6] and touch up screener.[7] (R. at 52.) The VE further testified that in the national economy there were 35,000 order clerk jobs, 13,000 document preparer jobs, and 11,000 touch up screener jobs. (*Id*.) ALJ Crockett relied on that testimony to determine that jobs existed in the national economy that Plaintiff was capable of performing. (R. at 23.) Because ALJ Crockett was authorized to rely on the VE's testimony, the Court finds that ALJ Crockett's determination was supported by substantial evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) ("[T]he Commissioner may rely on the testimony of a [VE] to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.")

Plaintiff appears to assert that the 59,000 combined jobs in the national economy does not constitute a significant number as a matter of law. (ECF No. 15, at PageID # 860.) But the Sixth Circuit Court of Appeals has found that far fewer jobs constituted a significant number of jobs. *See, e.g.*, *Taskila v. Comm'r Soc. Sec.*, 819 F.3d 902, 904 (6th Cir. 2016) (finding that 6000 "jobs in the United States fits comfortably within what this Court and others have deemed 'significant.'"); *Nejat v. Comm'r of Soc. Sec*., 359 F. App'x 574, 579 (6th Cir. 2009) (2000 jobs were significant.) This Court has also found that fewer jobs were significant. *See, e.g.*, *Duncan v. Comm'r of Soc. Sec.*, No. 2:19–cv–29, 2019 WL 6798917, at *3 (S.D. Ohio Dec. 13, 2019)

---

[5] DOT 209.567–014.
[6] DOT 249.587–018.
[7] DOT 726.684–110.

16

(45,000 jobs significant); *Riechman v. Comm'r of Soc. Sec.*, No. 1:20–cv–494, 2021 WL 3856014, at * 12 (S.D. Ohio August 30, 2021) (20,000 jobs significant).

Plaintiff nevertheless relies on *Mackins v. Astrue,* 655 F.Supp.2d 770, 773 (W.D. Ky. 2009), in which a District Court found that 60,000 jobs did not constitute a significant number of jobs in the national economy.  (ECF No. 15, at PageID # 860.)  In *Mackins,* however, the District Court reversed and remanded the ALJ's finding at step five primarily because the hypothetical question that the ALJ posed to the VE did not reflect all the plaintiff's supported limitations.  *Id.* at 772–73.  Moreover, the District Court questioned the reasonableness of the ALJ's reliance on the VE's testimony that there were 60,000 national copy machine operator jobs because that work appeared outmoded given the state of technology.  *Id.* at 773.  Here, the Court finds that ALJ Crockett did not fail to account for all of Plaintiff's limitations in her RFC or in the hypothetical questions he posed to the VE.  And Plaintiff does not raise concerns that the jobs identified by the VE are outmoded.  *Id.*

Plaintiff also specifically urges that because an ALJ must provide sufficient explanations for conclusions at other steps in the sequential evaluation process, an ALJ is likewise required to provide a sufficient explanation for finding that a claimant can perform work in the national economy at step five.  (ECF No. 15, at PageID # 859.)  The Court does not so find.  In *Hall v. Bowen*, the Sixth Circuit Court of Appeals explained that a judge should consider many criteria when determining if work exists in significant numbers, including the level of plaintiff's disability; the reliability of the vocational expert's testimony; the reliability of the plaintiff's testimony; the distance plaintiff is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work.  837 F.2d 272, 275 (6th Cir. 1988).  The Sixth Circuit later clarified that these factors were only suggestions.  *Harmon v.*

*Apfel*, 169 F.3d 289, 292 (6th Cir. 1999) ("*Hall* went on to state that these factors were suggestions only–the ALJ need not explicitly consider each factor."); *Mitchell v. Sec'y of Health & Human Servs*, 902 F.2d 33 (Table), 1990 WL 55669, *4 (6th Cir. May, 1, 1990) ("[Plaintiff] argues that the ALJ's failure to explicitly consider the factors delineated in *Hall* necessitates a remand. This argument is meritless, however, because the *Hall* court intended its stated factors as suggestions only.") At no time, however, did the Sixth Circuit impose an articulation requirement.

Regardless of whether the ALJ was required to discuss the *Hall* factors, the Court finds that on balance, they support the ALJ Crockett's step five determination. First, the reliability of the VE's testimony was addressed—the VE testified that her testimony was consistent with the DOT, and where the DOT did not address certain items, the VE relied upon her professional experience to testify about them. (R. at 53.) ALJ Crockett also performed a subjective symptom analysis and determined that Plaintiff's alleged symptoms and limitations were not fully supported by the evidence. (R. at 20, 21.) The types and availability of work was also considered—the VE testified that a hypothetical person with Plaintiff's RFC could perform several representative jobs, and the VE testified about the number of those jobs that existed in the national economy. (R. at 52.) Therefore, the Court finds that several of the *Hall* factors support ALJ Crockett's determination. Moreover, Plaintiff does not assert that ALJ Crockett posed a misleading or inaccurate question to the VE that failed to reflect the RFC that ALJ Crockett had assessed, which would have tainted the VE's testimony.

Instead, Plaintiff essentially argues that ALJ Crockett was not allowed to rely on the VEs testimony that there were 59,000 jobs in the national economy but offers no valid reason why

18

ALJ Crockett could not rely on that testimony. For these reasons, Plaintiff's contention of error lacks merit.

## C.     Plaintiff's constitutional claims lack merit.

Although not entirely clear,[8] it appears that Plaintiff challenges ALJ Crockett's step five determination because the term "significant number" of jobs is unconstitutionally vague. This argument also lacks merit.

In *Grayned v. City of Rockford*, the United States Supreme Court explained: "It is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined. 408 U.S. 104, 108 (1972) (emphasis added). The Court further explained the policy behind the void-for-vagueness doctrine.

> First, because we assume that man is *free to steer between lawful and unlawful conduct,* we insist that laws give the person of ordinary intelligence a *reasonable opportunity to know what is prohibited,* so that he may act accordingly . . . . Second, if arbitrary and discriminatory *enforcement* is to be prevented, laws must provide explicit standards for those who apply them.

*Id.* at 108–09. (emphasis added). Accordingly, courts apply the void-for-vagueness doctrine to evaluate laws or regulations that place prohibitions on behaviors or speech. *See e.g., id.* (applying void-for-vagueness doctrine to a city ordinance prohibiting certain types of picketing); *Kolendar v. Lawson*, 461 U.S. 352, 357–59 (1983) (applying void-for-vagueness doctrine to an ordinance requiring individuals to present "credible and reliable" information when requested by a police officer who has a reasonable suspicion of criminal activity); *Hartman v. Acton*, 499

---

[8] Plaintiff's Statement of Errors includes a section heading stating that "Plaintiff's right to Due Process and Equal Protection under the law has been violated" and quotes a void-for-vagueness discussion in a 2020 decision from this Court. (ECF No. 15, at PageID #859–60.) In the discussion that follows, Plaintiff urges that the 59,000 jobs in the national economy is not a significant number of jobs but does not develop or describe her Constitutional claims. (*Id.* at PageID # 860–61.)

F.Supp. 3d 523, 533–34 (S.D. Ohio 2020) (applying void-for-vagueness doctrine to stay-at-home order issued by a state health department director). But the Court cannot find any cases where the void-for-vagueness doctrine was found to be applicable to legislative entitlements to benefits.

Indeed, the only cases the Court has located specifically find that the void-for-vagueness doctrine does not apply to entitlements. For example, in *Woodruff v. United States*, the plaintiff alleged that a provision in a procedural manual that established guidelines for determining whether an injured employee was eligible for compensation under the Federal Employees' Compensation Act (FECA) was void for vagueness because it failed to set forth any standard or definition for the term "premises." 954 F.2d 634, 641 (11th Cir. 1992). The Eleventh Circuit Court of Appeals held that the plaintiff's void-for-vagueness challenge was "wholly without merit" because the provision at issue did "not attempt to guide conduct, but [was] merely an interpretive rule for the [agency] to follow in making FECA coverage determinations." *Id*. at 642. Similarly, in *Nyeholt v. Secretary of Veterans Affairs*, a plaintiff alleged that a guideline used by medical examiners to evaluate disability status for veterans who received liver transplants was void for vagueness because it lacked standards and failed to inform veterans what was required to maintain disability status. 298 F.3d 1350, 1355–56 (Fed. Cir. 2000). The Federal Circuit Court of Appeals held that the plaintiff's void-for-vagueness challenge was not cognizable because the guideline did not purport to define lawful and unlawful conduct—a veteran's physical condition "is what it is" and the guideline was used by medical professionals to evaluate that condition. *Id*. at 1357.

Such is the case here. The Social Security regulations provide that an ALJ must find that a claimant is disabled if she cannot perform other work that exists in "significant numbers" in the national economy. The regulations describe an evidentiary standard for determining if a

20

claimant is entitled to benefits.  They do not attempt to guide conduct or speech or inform citizens what they can or cannot do without incurring civil or criminal penalties.  Thus, they do not implicate the policy considerations that underly the void-for-vagueness doctrine. Accordingly, Plaintiff's final contention of error lacks merit.

**V.     DISPOSITION**

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors **AFFIRMS** the Commissioner's non-disability determination.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE